**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**ROBERT J. ALEXANDRE,**

**Plaintiff,**

v.                                                                           **No. 11-cv-0384 JB/SMV**

**MICHAEL J. ASTRUE, Comm'r of SSA,**

**Defendant.**

**MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before me on Plaintiff's Motion to Remand or Reverse [Doc. 26] and

Plaintiff's Brief in Chief in Support of Plaintiff's Motion to Remand [Doc. 27] (collectively,

"MRR"), filed on January 27, 2012. The Administrative Law Judge (ALJ) issued a final decision

denying benefits upon a finding that Plaintiff was not disabled. The Appeals Council denied

Plaintiff's request for review. Therefore, the ALJ's decision became the final decision of the

Commissioner. The ALJ based his decision, in part, upon an expert opinion given by a

Vocational Expert (VE). The VE based her opinion upon a hypothetical posed to her by the ALJ.

I find that the hypothetical posed by the ALJ was incomplete as it did not include certain

limitations that the ALJ himself had found. Furthermore, the ALJ did not accord probative

weight to the agency medical doctors, leaving no evidentiary support for the residual functional

capacity (RFC) determination.  Additionally, I find that the limitation that Plaintiff work with

"things not people" is not found in the record.  Finally, I find that the administrative decision

does not reflect proper consideration of Dr. Walker's opinion or the Plaintiff's dexterity texting.

Therefore, being otherwise fully advised in the premises, I will RECOMMEND that Plaintiff's Motion to Remand or Reverse [Doc. 26] be GRANTED and the case be REMANDED pursuant to 42 U.S.C. § 405(g) (sentence four).

## I.    <u>Procedural Background</u>

Plaintiff filed his application for Disability Insurance Benefits (DIB) and disabled adult child's disability benefits on July 15, 2008.  Tr. 124.   The ALJ conducted a hearing on November 12, 2009 and issued his decision on February 9, 2010. Tr. 10–39.  The ALJ found that Plaintiff's history of attention deficit hyperactivity disorder (ADHD), learning disorder, and borderline intellectual functioning were severe impairments, but that Plaintiff did not have an impairment or combination of impairments that met or equaled a "Listing."[1]  Tr. 14.   He determined that Plaintiff had no significant exertional limitations and that he retained the residual functional capacity to perform non-complex tasks working with things rather than with people. Tr. 15.   The ALJ found that Plaintiff had no past relevant work.  *Id.*   However, relying on assistance from a vocational expert, he concluded that Plaintiff could perform work existing in significant numbers in the national economy.  *Id.*   Accordingly, the ALJ found that Plaintiff was not disabled at any time through the date of his decision.  *Id.*   After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision. Tr. 1–3.  Plaintiff filed his MRR on January 27, 2012. [Docs. 26, 27].  The Commissioner filed his Response [Doc. 28] on March 5, 2012. Plaintiff filed his Reply [Doc. 32] on April 3, 2012.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

2

## II.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility

---

[2] A court's review is limited to the Commissioner's final decision.  42 U.S.C. § 405(g).  If the Appeals Council denies review and does not modify the ALJ's decision, the ALJ's decision becomes the Commissioner's final decision, and the district court reviews the ALJ's decision.  *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981).

of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.    Applicable Law and Sequential Evaluation Process

In order to qualify for DIB and supplemental security income (SSI), a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity;" *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### IV.     Background and Medical Evidence

Plaintiff was born on July 2, 1987.  Tr. 124.  He began receiving benefits as a child based on his disabled mother's earning record.  Tr. 11; MRR [Doc. 27] at 1; Response [Doc. 28] at 14. He required special education throughout his schooling. He graduated from high school in 2005. Tr. 11.  After high school, Plaintiff attended a job corps program in Roswell, New Mexico, where he studied auto-body repair. He graduated from that program in 2006.  Tr. 13, 320–21.  In addition, he also worked at a restaurant as a cook, food preparer, and bus person.[4]  Tr. 321.  After the job corps program, Plaintiff completed a one-year independent-living program for special needs students at Eastern New Mexico University.  *Id.*

David Montoya, a Certified Vocational Evaluator ("CVE"), assessed Plaintiff's "vocational aptitudes, rehabilitation potential, and interests" on September 29, 2006, at the request of the New Mexico Division of Vocational Rehabilitation.  Tr. 320–24.  Mr. Montoya performed a Beta intelligence quotient (IQ) test that resulted in a score of 76.  Tr. 321.  He also assessed Plaintiff's reading and math skills at the third-grade level.  *Id.*  However, Mr. Montoya concluded that because Plaintiff could read and understand the Career Assessment Inventory questionnaire, he may actually read at the fourth- or fifth-grade level.  Tr. 322.  Finally, Mr. Montoya reported that Plaintiff scored under "05%" on the Valpar #6, "[l]ess than 1 percentile" on the tweezers portion of the Crawford Small Parts Dexterity Test, in the 25th percentile on the screwdriver-usage portion of the Crawford, and in the tenth percentile on the Bennett Hand Tool Dexterity Test.  *Id.*  Mr. Montoya concluded that Plaintiff was an "excellent

---

[4] Apparently, Plaintiff was hired at the restaurant because his mother knew the owner.  Tr. 13.

candidate for direct job placement or on-the-job training" and that Plaintiff's goal to become "an auto body man [was] entirely appropriate." Tr. 323.

On July 15, 2008, at the age of 21, Plaintiff applied for DIB and disabled adult child's benefits on his mother's earning record. Tr. 10, 127–37. At that time, he also applied for SSI. Tr. 10, 124–26. The New Mexico Disability Determination Services (DDS) referred Plaintiff to Michael Gzaskow, M.D., for a consultative psychiatric examination on August 12, 2008. Tr. 326–39. Dr. Gzaskow examined the Plaintiff and reviewed Mr. Montoya's notes from 2006.. Tr. 326. Dr. Gzaskow diagnosed Plaintiff with ADHD "by history" and learning disorder not otherwise specified (NOS) with borderline intellectual functioning. Tr. 328. He further noted that Plaintiff could "relate to others at a basic/simple level[,] understand and follow directions in a structured/supportive developmentally disabled environment[, and] attend to simple tasks." Tr. 329. Dr. Gzaskow opined that Plaintiff did not have the ability to manage his own funds, and that if he were to be awarded benefits, they should be managed by his "loving/caring mother." *Id.*

Scott Walker, M.D., a state-agency physician, was asked to review Plaintiffs medical records, including Dr. Gzaskow's report, and to give an opinion as to the severity of Plaintiff's mental impairments and RFC. *See* Tr. 330–48. Dr. Walker completed two forms on August 21, 2008: a Mental Residual Functional Capacity Assessment (MRFCA) form and a Psychiatric Review Technique (PRT) form. *Id.* Dr. Walker indicated on the MRFCA that Plaintiff was (a) markedly limited in his ability to carry out detailed instructions, and (b) moderately limited in his ability to understand and remember detailed instructions; to maintain attention and

6

concentration for extended periods; to perform activities within an schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others.  Tr. 330–31.

On the PRT, Dr. Walker indicated that Plaintiff suffered from "ADHD Learning Disorder [rule out] Borderline Intellectual Functionin[g]."  Tr. 335.  Dr. Walker opined that, due to his mental disorder, Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  Tr. 344.  On August 21, 2008, the same day that Dr. Walker completed his assessments, Plaintiff's applications for benefits were denied. Tr. 47−56.

Plaintiff requested reconsideration on October 22, 2008.  Tr. 57–59.  On November 25, 2008, Elizabeth Chiang, M.D., reviewed Dr. Gzaskow's and Dr. Walker's records.  Tr. 348. Dr. Chiang also reviewed a function report submitted by Plaintiff's mother.  *Id.*  Dr. Chiang concurred with Dr. Walker's assessments.  *Id.*  On reconsideration, Plaintiff's applications were denied on November 25, 2008, the same day that Dr. Chiang completed her report.  Tr. 60−68.

Plaintiff requested a hearing, which was held before ALJ William H. Helsper on November 12, 2009.  Tr. 17.  At the hearing, the ALJ heard testimony from Plaintiff, his mother and Pamela Bowman, a vocational expert (VE).  Tr. 17–39.  The ALJ presented the following hypothetical to the VE:  "An individual 22 years of age, has a marginal education, and how [sic] is reduced to non-complex tasks, working with things rather than people.  What kinds of jobs—unskilled jobs exist that would take that into account?"  Tr. 33.   The VE testified that such a person could perform the duties of dishwasher, Dictionary of Occupational Titles (DOT) number 318.687-010; odd job worker, DOT number 301.687-000, and bus person, DOT number 311.677-018.  *Id.*

The ALJ issued his unfavorable decision on February 9, 2010.  Tr. 16.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date.  Tr. 11.  At step two, the ALJ found that Plaintiff had a history of ADHD; learning disorder, NOS; and borderline intellectual functioning, all of which were "severe."  *Id.* At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled any Listing.  *Id.*

Next, the ALJ formulated Plaintiff's RFC.  In so doing, he summarized Mr. Montoya's opinion, but did not explain what weight, if any, he gave to it.  Tr. 11–12.  The ALJ further indicated that he had considered the opinions of Drs. Gzaskow, Walker, and Chiang "[p]ursuant to 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Ruling 96-6p."  Tr. 12.  He described some of Dr. Walker's findings, including that Plaintiff could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time,

interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id.* (citing Tr. 330–33).  However, the ALJ expressly did "not accord significant probative weight" to the agency's doctors' opinions because "the record contain[ed] new and material evidence such as the testimony at the hearing."  Tr. 12.

Even though the ALJ did not accord significant weight to Dr. Walker's opinion, he did conclude that Plaintiff had moderate deficiencies in concentration, persistence, or pace.  *Id.* Nevertheless, the ALJ failed to include this limitation in the hypothetical posed to the VE.  *Id.* The ALJ also failed to include the limitation in the RFC.  Instead, the ALJ found that Plaintiff had the RFC "to perform the non-exertional requirements of non-complex tasks, working with things rather than with people.  There are no significant exertional limitations."  Tr. 15.  At step four, the ALJ found that Plaintiff had no "past relevant work."  Tr. 10.  Finally, at step five, the ALJ found that considering Plaintiff's RFC, age, education, and work experience, Plaintiff was able to make the adjustment to other work that exists in significant numbers in the national economy.  Tr. 11.  Specifically, the ALJ found that Plaintiff was capable of working as a dishwasher, odd job worker, and bus person.  Tr. 15.

Plaintiff requested review of the ALJ's decision, but on April 13, 2011, the Appeals Council denied review.  Tr. 1–3, 6.  Plaintiff filed his Complaint on May 5, 2011.  [Doc. 1]. Thus, Plaintiff's claim is ripe before this Court.

## V.      **Analysis**

I will recommend remand because several, but not all, of Plaintiff's arguments are persuasive.  First, the ALJ impermissibly failed to include in the RFC and in the hypothetical

9

posed to the VE all of the limitations he found.  Second, the ALJ did not accord probative weight

to the agency medical doctors, leaving an evidentiary deficit to support his RFC determination.

Also, the RFC is not supported by substantial evidence because the things-not-people limitation

is not found in the record at all. Next, the ALJ's decision does not reflect that he considered

Dr. Walker's opinion or the Plaintiff's dexterity texting according to the factors outlined in the

regulations.  However, contrary to Plaintiff's assertions on appeal, I find that the ALJ properly

considered Plaintiff's literacy level and Dr. Gzaskow's opinion.  Further, Plaintiff's request to

disregard Dr. Walker's opinion should be denied because the Court must review the record as a

whole.  Finally, the ALJ had no duty to seek out a file related to Plaintiff's disability status as a

child because, among other reasons, there is no evidence that such a file exists.  For the errors

listed, I recommend remand.

### A.  Certain limitations found by the ALJ were improperly omitted from the RFC and the hypothetical to the VE.

Plaintiff argues that the case should be remanded because neither the RFC nor the

hypothetical presented to the VE included all of the limitations found by the ALJ.  MRR

[Doc. 27] at 4.   Specifically, the ALJ found that Plaintiff had moderate deficiencies in

concentration, persistence, or pace.  *Id.* (citing Tr. 13).  However, the ALJ failed to include these

limitations in the hypothetical to the VE.  *Id.* (citing Tr. 33).  The ALJ also failed to include the

limitations in the RFC.  Tr. 15.  The Commissioner does not dispute that the ALJ found such

limitations.   *See* Response [Doc. 28] at 7.   Instead, without citing to any authority, the

Commissioner argues that the RFC's "restriction to non-complex tasks accounted for the

work-related effect of Plaintiff's moderate deficiency in concentration, persistence, or pace."  *Id.*

Plaintiff replies that there is no evidence in record—from the VE, for example—to support the Commissioner's position.  Reply [Doc. 32] at 1–2 (citing *Wiedehold v. Barnhart*, 121 F.App'x 833, 839 (10th Cir. 2005) (unpublished) ("Because the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed."); *Macmeeken v. Astrue*, No. 08-cv-1045 MV/RPL, Magistrate Judge's Report and Recommended Disposition (D.N.M. July 2, 2009) (unpublished) (same) (adopted by the Court on September 28, 2009)).  Plaintiff is correct.  The RFC and the hypothetical are deficient, and remand is warranted.

It is well-established that an ALJ's hypothetical question to a vocational expert "must include all (and only) those impairments borne out by the evidentiary record."  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995).  Hypothetical questions should be crafted carefully to reflect a claimant's RFC because "[t]estimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991).

Here, the ALJ expressly found that moderate deficiencies in concentration, persistence, or pace were borne out by the record.  Tr. 12.  However, he failed to include those impairments in the RFC or in the hypothetical to the VE.  These omitted limitations may have affected the vocation expert's testimony.  *See Kingsbury v. Astrue*, No. 08-4014-JAR, 2008 WL 4826139, *8 (D. Kan. Nov. 5, 2008) (unpublished) (recommending remand where ALJ failed to include in the hypothetical his own finding of moderate limitations in concentration, persistence, or pace because the VE testified that such limitations would preclude the jobs identified by the ALJ).

Therefore, the omission of the limitations from the hypothetical was error, and the case should be remanded.

## B.  The RFC is not supported by substantial evidence.

The RFC lacks substantial evidence in two ways.  First, the ALJ did not accord significant weight to agency's doctors' opinions, but without them, there is no medical evidence to support the ALJ's RFC.  Second, there is no support in the record—not even a scintilla—for the RFC's things-not-people limitation.  However, I will not, as Plaintiff requests, recommend any specific changes to the RFC because determination of the RFC is for the Commissioner and not for this Court.

First, without the opinions of Drs. Gzaskow, Walker, and Chiang—to which the ALJ did "not accord significant probative weight"—there is no other evidence of record to support the ALJ's RFC.  Tr. 12; *see Suide v. Astrue*, 371 F.App'x 684, 690 (7th Cir. 2010) ("[I]t is the evidentiary deficit left by the ALJ's rejection of his reports—not the decision itself—that is troubling. The rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination . . . .").  Because the ALJ did not give significant weight to their opinions and because there is no other medical opinion remaining, the RFC is not supported by substantial evidence.

Additionally, the things-not-people limitation in the RFC is not supported by substantial evidence.  I find the limitation nowhere in the record except in the ALJ's RFC determination.[5] Without substantial evidentiary support, remand is warranted.

---

[5] One could speculate that the limitation is rooted in Plaintiff's literacy level and in 20 CFR pt. 404, subpt. A, app. 2, sec. 201.00(i), which reads:  "While illiteracy or ability to communicate in English may significantly limit an

Plaintiff also argues that the ALJ erred in omitting Dr. Walker's MRFCA limitations from the RFC.  MRR [Doc. 27] at 6–7.  The Commissioner responds that Plaintiff confuses Section I with Section III of Dr. Walker's report.  He argues that Section I is only a worksheet to aid the doctor in recommending an RFC.  Thus, the particular findings on the worksheet need not be adopted by the ALJ.  Response [Doc. 28] at 8 (citing Tr. 330–32; POMS DI 24510.060(B) [Ex. A of Response]).  Although, as explained below, I find that the ALJ did not properly weigh Dr. Walker's opinion, I will not go as far as Plaintiff urges.  I may not reweigh the evidence, *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118, and therefore, I will not decide what limitations should be included in the RFC.  Determining the precise contours of the RFC is properly left to the Commissioner.

### C.  The ALJ's decision does not reflect proper consideration of Dr. Walker's opinion.

Plaintiff argues that the ALJ failed to explain how the hearing testimony constituted new and material evidence that undermined Dr. Walker's opinion.  MRR [Doc. 27] at 6–7; Reply [Doc. 32] at 3.  Therefore, he concludes that the ALJ improperly rejected Dr. Walker's opinion. *See id.*  The Commissioner does not respond directly to this argument.  Plaintiff is correct.

---

individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance."  The ALJ, however, did not make this link himself.  *See* Tr. 10–16.  Reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision."  *Haga v. Astrue*, 482 F.2d 1205, 1207–08 (10th Cir. 2007); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  It would be improper for a reviewing court to "supply[] possible reasons" for an ALJ's decision after the fact.  *Robinson*, 366 F.3d at 1084.  A court may not make a "post hoc effort to salvage [an] ALJ's decision" because such an effort would thrust the court beyond its proper role of judicial review and into the exclusive domain of the administrative agency as defined by Congress.  *Id.* at 1084–85 (quoting *Allen v. Barnhart*, 357 F. 3d 1140, 1142 (10th Cir. 2004)).  This Court, therefore, may only consider the reasons provided by the ALJ himself and may not provide any post hoc support.

ALJs are "not bound by any findings made by State agency medical . . . consultants." However, these medical consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation.  Therefore, [ALJ]s must consider [their] findings and other opinions . . . as opinion evidence, except for the ultimate determination [of disability]." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  In so doing, ALJs "must" consider the extent to which the opinion is supported by evidence, such as medical signs and laboratory findings; the opinion's consistency with the record as a whole; the consultant's specialty; and other factors, such as the consultant's level of understanding of the disability program and its evidentiary requirements.  20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ failed to weigh Dr. Walker's opinion utilizing any of these factors. *Compare* 20 C.F.R. § 404.1527(c), *and* § 416.927(c), *with* Tr. 12.  Instead, the ALJ determined that Dr. Walker's opinion was not entitled to significant weight because "the record contains new and material evidence, such as the testimony at the hearing."  Tr. 12.  This logic fails to support the weighing of Dr. Walker's opinion because it applies in virtually every case.  In fact, I can think of no instance in which a hearing before an ALJ would not produce testimony that is new and material.  If this were an adequate reason to accord little weight to a medical opinion, every medical opinion would be suspect.  Moreover, the ALJ failed to properly consider Dr. Walker's opinion according to the factors in §§ 404.1527(c), 416.927(c).  Therefore, the case should be remanded.

### D.  The ALJ's decision does not reflect
### proper consideration of the Plaintiff's dexterity testing.

Plaintiff argues that the speed and dexterity limits assessed by certified vocational evaluator Mr. Montoya belie the RFC, MRR [Doc. 27] at 8 (citing Tr. 322), and are a "factor in the jobs [cited] by the ALJ," Reply [Doc. 32] at 6.  The Commissioner admits that there is conflicting evidence regarding Plaintiff's dexterity.  Response [Doc. 28] at 8 (citing Tr. 324).

The Commissioner does not consider rehabilitation counselors to be "acceptable medical sources."  SSR 06-03p, 2006 WL 2329939 at 2.  Thus, their opinions cannot establish the existence of a medically determinable impairment.  *Id.*  However, rehabilitation counselors, like other non-medical sources, can "provide insight into the severity of [an] impairment(s) and how it affects the individual's ability to function."  *Id.*  Therefore, in weighing the opinions of non-medical sources, ALJs should consider certain factors:

> [1] How long the source has known and how frequently the source has seen the individual; [2] How consistent the opinion is with other evidence; [3] The degree to which the source presents relevant evidence to support an opinion; [4] How well the source explains the opinion; [5] Whether the source has a specialty or area of expertise related to the individual's impairment(s); [6] and Any other factors that tend to support or refute the opinion.

*Id.* at 4–5.

Additionally, for non-medical *professionals*—as opposed to non-medical, *non-professional* sources, such as family, friends, neighbors, etc.—other properly considered factors include:  "the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his . . . opinion, whether the opinion is consistent with other

evidence . . . ." *Id.* at 5.  ALJs are not only encouraged to consider non-medical source opinions, but the regulations further instruct them to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ." *Id.* at 6; *see Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008).

In this case, the ALJ's decision does not reflect consideration of Mr. Montoya's opinion according to any of the factors.  The ALJ may have given some weight to the opinion as it is the only evidence of record related to Plaintiff's reading skills, which supported the ALJ's finding of "marginal education."   *See* Section E, *infra* (attributing the marginal education finding to Plaintiff's literacy level).  However, because there is no discussion of Mr. Montoya's opinion as to Plaintiff's dexterity, I do not know how the ALJ considered it and cannot follow his reasoning.  Therefore, the case should be remanded for consideration of Mr. Montoya's opinion consistent with SSR 06-03p.

### E.  The ALJ properly considered Plaintiff's reading and writing deficits.

Plaintiff argues that the ALJ impermissibly omitted Plaintiff's reading and writing deficits from the RFC.  MRR [Doc. 27] at 8 (citing Tr. 323, 30; SSR 85-15).  However, the Commissioner points out that the ALJ found that Plaintiff read at a fourth- or fifth-grade level, which was reflected in the RFC as "marginal education."  Response [Doc. 28] at 8 (citing Tr. 12, 322, 33; 20 CFR §§ 404.1564(b)(2), 416.964(b)(2)).  Defendant adds that illiteracy has the least significance in unskilled work "in which an individual works primarily with things rather than

people."  Response [Doc. 28] at 9 (citing 20 CFR pt. 404, subpt. A, app. 2, sec. 201.00(i)).

Plaintiff does not reply.  I agree with Defendant.

The ALJ expressly considered Plaintiff's reading skills.  Tr. 12.  The ALJ recounted

Mr. Montoya's vocational assessment of Plaintiff's literacy.  *Compare* Tr. 12, *with* Tr. 322.  The

ALJ properly considered Plaintiff's literacy as evidenced by his express discussion of it and his

finding of marginal education, which was included in the hypothetical.  Tr. 12 (ALJ's decision,

recounting Mr. Montoya's literacy findings), 15 (ALJ's finding of marginal education),

33 (hypothetical presented to VE), 322 (Mr. Montoya's report); *see Newburn v. Barnhart*,

No. 02-5055, 62 F.App'x 300, 303–04 (10th Cir. April 16, 2003) (unpublished) (affirming

finding of marginal education where testimony did not contradict it and where definition of

illiteracy was not met).  I find no error with respect to Plaintiff's reading and writing skills.

### F.  The ALJ properly considered Dr. Gzaskow's opinion.

Plaintiff argues that the case should be remanded because the ALJ failed to include in the

hypothetical to the VE certain language utilized by Dr. Gzaskow or to give his reasons for such

omission.  MRR [Doc. 27] at 9; Reply [Doc. 32] at 6.  In particular, Plaintiff asserts that the

hypothetical did not include the following language from Dr. Gzaskow's report:  (1) Plaintiff

needs a "structured/supportive developmentally disabled environment;" (2) Plaintiff can "attend

to simple tasks;" and (3) Plaintiff "DOES NOT have ability to manage funds."  MRR [Doc. 27]

at 9 (citing Tr. 329) (emphasis in original).  Plaintiff concludes that it is "obvious that

Dr. Gzaskow did not consider Plaintiff capable of competitive employment."  *Id.*

17

The Commissioner responds that the ALJ did, in fact, discuss and consider Dr. Gzaskow's evaluation. Response [Doc. 28] at 9 (citing Tr. 12, 326–29). Moreover, he asserts that the RFC is consistent with Dr. Gzaskow's evaluation. *Id.* Plaintiff replies that the RFC is not consistent with Dr. Gzaskow's language, and therefore, the language should have been included in the hypothetical. Reply [Doc. 32] at 6. Furthermore, without any citation to authority, Plaintiff insists that "[d]evelopmentally disabled" is not consistent with competitive employment. Reply [Doc. 32] at 6.

As explained in Section A, hypothetical questions must include all of a claimant's impairments. *Hargis*, 945 F.2d at 1492. Here, I find that the ALJ considered and discussed Dr. Gzaskow's opinion. *See* Tr. 12. Furthermore, I disagree with Plaintiff that Dr. Gzaskow opined that Plaintiff was not capable of competitive employment. *See* Tr. 325–29. More to the point, however, I find no error in the RFC as it relates to Dr. Gzaskow's opinion because the two are not inconsistent with each other. *See Hargis*, 945 F.2d at 1492.

### G. Dr. Walker's assessment should be considered.

Plaintiff asks the Court to disregard Dr. Walker's assessments for several reasons. MRR [Doc. 27] at 10–11. However, a court must review the "record as a whole." *E.g., Hamlin*, 365 F.3d at 1214. Because Plaintiff cites no legal authority to support the disregarding of a portion of the record, and because I have found authority to the contrary, I find that Plaintiff's objection to Dr. Walker's evaluation is meritless and should be overruled.

**H.  The ALJ did not fail to develop the record.**

Plaintiff argues that the ALJ failed to develop the record when he did not include Plaintiff's "prior file of childhood disability."  MRR [Doc. 27] at 11.  Plaintiff asserts that this file "doubtless contained earlier IQ test results, which would have been the basis for that childhood disability."  MRR [Doc. 27] at 11.  He assumes that he received "childhood disability" benefits for the child corollary to Listing 12.05C, and therefore, he "may" meet Listing 12.05C now.[6]  MRR [Doc. 27] at 11–12.  Plaintiff's argument fails for several reasons.

First, the present record does not indicate that a record of childhood disability exists.  Minor children may be awarded benefits from the Commissioner under two distinct programs: disability and SSI.  *Compare* 20 C.F.R. § 404.350(a) (disability), *with* §§ 416.202, 416.906 (SSI).  Despite its name, the disability program does not require a *child* to be disabled.  20 C.F.R. § 404.350(a).  Instead, it requires that a child's *parent* be disabled.  *Id.*  The disability program pays benefits to children who have a disabled parent with qualifying earnings.  *Id.*  On the other hand, the SSI program awards benefits to children who are themselves disabled and meet income requirements.  20 C.F.R. §§ 416.202, 416.906.  In this case, it is undisputed that Plaintiff received disability benefits as a child, on his disabled mother's earning record.  The ALJ had no reason to believe that Plaintiff's own disability was ever at issue before the Commissioner or that any file existed with previous IQ tests. The ALJ had no reason to obtain or consider records that did not exist.

---

[6] Listing 12.05C is met—and therefore triggers a findings of disabled—when the individual has an IQ between 60 and 70, along with a physical or other mental impairment imposing an additional significant work-related limitation of function.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

There are two additional reasons why the ALJ did not err in failing to develop the record. In social security cases, the claimant bears the burden of proving he is disabled. *Maes*, 522 F.3d at 1096. However, administrative social security hearings are non-adversarial. *Id.* Thus, the ALJ is responsible for developing an adequate record on the issues raised. *Id.* If pertinent and available medical records come to the ALJ's attention during the course of the hearing, he must obtain them. *Id.* "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation." *Id.* at 1097.

Here, the ALJ had records from two sources, which were consistent with each other in opining that Plaintiff had borderline intellectual functioning. Tr. 321 (Mr. Montoya assessed an IQ of 76), 328 (Dr. Gzaskow assessed borderline intellectual functioning). Thus, the ALJ had no reason to develop the record further on that issue. Finally, Plaintiff—who was represented by a licensed attorney at the hearing—did not object to the record at that time. For these reasons, I find that the ALJ committed no error in developing the record as he did, and remand is not appropriate on this issue.

## VI.   <u>Conclusion</u>

**IT IS RESPECTFULLY RECOMMENDED** that Plaintiff's Motion to Remand or Reverse [Doc. 26] be **GRANTED** and the case be **REMANDED** because the ALJ impermissibly failed to include all of the limitations he found in the RFC and in the hypothetical; because the RFC lacks substantial evidence where the ALJ did not accord probative weight to the agency medical doctors, leaving no evidentiary support for the RFC determination and where

the things-not-people limitation is not found in the record; and because the decision does not reflect that Dr. Walker's opinion or the Plaintiff's dexterity texting was considered according to the factors outlined in the regulations.

**IT IS FURTHER RECOMMED** that Plaintiff's objections be overruled.  The Court should consider Dr. Walker's opinion because the record must be reviewed as a whole, and no file of childhood disability should be ordered on remand because there is no evidence that such a thing exists.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

21